UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

TROY BETTIS,                          )
                                      )
    *Plaintiff*,                  )
                                      )
v.                                    )        Case No. 1:04-cv-112
                                      )
JERRY PEARSON, *et al.*,              )        Judge Mattice
                                      )
    *Defendants.*                 )

## <u>MEMORANDUM AND ORDER</u>

Plaintiff brings a civil rights action against Defendants based on his arrest and subsequent medical treatment. Plaintiff asserts causes of action and damages under 42 U.S.C. §§ 1983, 1985, and 1988, and corresponding Tennessee common law causes of action, as well as intentional and negligent infliction of emotional distress under Tennessee common law.

Before the Court are the Motion for Summary Judgment by Defendants, Officer Michael Smith, Five Unknown Officers, and the City of Chattanooga [Court Doc. No. 61] and Defendant Jerry Pearson's Motion for Summary Judgment [Court Doc. No. 58]. Defendants seek summary judgment pursuant to Federal Rules of Civil Procedure 56 and 4(m) on Plaintiff's claims under §§ 1983, 1985, and 1988, as well as Plaintiff's Tennessee common law causes of action. For the reasons stated below, the Court will **GRANT IN PART AND DENY IN PART** Defendants Smith's, Five Unknown Officers', and the City of Chattanooga's motion, and will **GRANT IN PART AND DENY IN PART** Defendant Pearson's motion.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  To refute such a showing, the nonmoving party may not simply rest on its pleadings.  *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)*; see Anderson*, 477 U.S. at 249.  The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute.  *Celotex*, 477 U.S.  at 322.  A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence

from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The following are the relevant facts viewed in the light most favorable to Plaintiff.

On April 15, 2003, or in the early hours of April 16, 2003, Plaintiff arrived at a restaurant and lounge with Ms. Stephanie Shaw. (Court Doc. No. 62, Pla.'s Dep. 43-44, 47.) Sometime after Plaintiff and Ms. Shaw arrived, they were joined by Ms. Brandi Campbell. (*Id.* 54-55.) Plaintiff dated Ms. Campbell for five years prior to April 16, 2003. (Pla.'s Dep. 26-28.) Also at the establishment were Defendants Pearson and Smith. (*Id.* 48-49.) Defendant Pearson had also dated Ms. Campbell. (*Id.* 26). Defendant Pearson was on duty, and was wearing his uniform. (*Id.* 50-51.) Defendant Smith was in plain clothes, was unarmed, and was not on duty. (Court Doc. No. 61-10, Def. Smith Dep. 17-19.)

Shortly after Brandi Campbell arrived, Ms. Campbell and Plaintiff decided to leave together. (Pla.'s Dep., p. 56.) Before leaving, Plaintiff consumed about three beers, but does not know the exact number because he did not count. (*Id.* 44.) According to Defendant Pearson, Plaintiff's speech was "slightly slurred" and he had "a

strong odor of intoxicant about his person . . . ." (Court Doc. No. 61-9, Pearson Dep. 26:15-17).

As plaintiff approached the bar to pay his tab, Defendant Pearson asked him "Can I help you?," to which he responded "What was in the past needs to stay in the past." (*Id.* 57:19-22.) Plaintiff interpreted Defendant Pearson's question as threatening in light of the men's prior relationships with Ms. Campbell. (*Id.* 58.) Plaintiff then turned to walk away while Defendant Pearson grabbed his arm. (*Id.* 61.) Plaintiff asked Defendant Pearson if he was going to take him to jail. (*Id.*) Officer Pearson responded that he was going to take Plaintiff to jail. (*Id.*) Plaintiff replied, "Well, f_ _k it, let's go." (*Id.* 61:11) Plaintiff then turned his back to Defendant Pearson and walked away. (*Id.*)

Defendant Pearson then shoved Plaintiff, lifted him off the ground, and began to strike him. (*Id.* 62.) Although Plaintiff was not resisting (Court Doc. No. 69-6, Shaw Aff. ¶ 21), Defendant Pearson verbally instructed Plaintiff to stop resisting within earshot of Defendant Smith. (*See* Court Doc. No. 61-9, Pearson Dep. 27.) Defendant Smith became aware of the situation only after Plaintiff and Defendant Pearson had begun their altercation. (Court Doc. No. 69-4, Def. Smith Dep. 30-31). Defendant Smith then assisted Defendant Pearson in "taking down" Plaintiff. (Shaw Aff. ¶ 22.) As Plaintiff crawled under a cooler (Pla.'s Dep., p. 84-85), Defendant Smith handed Defendant Pearson's handcuffs to him, and Defendant Pearson handcuffed Plaintiff. (Def. Smith Dep. 25.) Defendant Smith then stepped back and continued to restrain Ms. Campbell, who had previously attempted to pull Defendant Pearson away from Plaintiff. (*Id.*)

Defendant Pearson transported Plaintiff to Parkridge Medical Center. (Pla.'s Dep., p. 36.) Defendant Smith did not go to the hospital. (*Id.* 79.) While at the hospital,

Defendant Pearson insisted that Plaintiff provide a urine specimen. (*Id.* 87.) Plaintiff refused to provide a specimen. (*Id.* 88.) In response, Defendant Pearson picked Plaintiff out of the chair to which he was handcuffed, while falsely reciting that Plaintiff was being belligerent and throwing his chair at Defendant Pearson. (*Id.*) After Plaintiff remarked that Defendant Pearson was crazy, Defendant Pearson told Plaintiff that he was going to mace him. (*Id.*) Defendant Pearson then pinned Plaintiff with his knee on Plaintiff's neck and deployed his mace into Plaintiff's eyes and nostrils at extremely close range. (*Id.*) Plaintiff was then given medical attention to rinse out his eyes after he was sprayed. (Def. Pearson Dep. 33.)

After Plaintiff was discharged from the hospital, he was taken to jail. (*Id.* 34.) Plaintiff was charged with public intoxication and resisting arrest. (Court Doc. No. 1, Compl. ¶ 18.) Defendant Pearson failed to appear as a witness for the prosecution in the corresponding criminal case against Plaintiff, and the case was dismissed. (Court Doc. No. 69-3, Dep. of Def. Pearson 40.)

## III.    ANALYSIS

### A.    Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) provides, in pertinent part, as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Thus, pursuant to Rule 4(m), if a plaintiff has not timely served a defendant and shows good cause for such failure, the Court must extend the time for

service.  If, however, no good cause for such failure is shown, Rule 4(m) permits the

Court to choose, in its discretion, either to dismiss the action without prejudice as to that

defendant or to direct that service be effected within a specified time.

It is undisputed that Plaintiff has neither named nor served with process the five

unknown officers he includes in his Complaint.  Further, many more than 120 days have

passed since Plaintiff filed his Complaint.  As Plaintiff offers no good cause for this

delay, and agrees that the five unknown officers should be dismissed, the Court will

**DISMISS WITHOUT PREJUDICE** these defendants pursuant to Rule 4(m).

### B.     42 U.S.C. § 1983

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 makes liable only those who, while acting under color

of state law, deprive another of a right secured by the Constitution or federal law."

*Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two

elements: "(1) that he was deprived of a right secured by the Constitution or laws of the

United States, and (2) that he was subjected or caused to be subjected to this

deprivation by a person acting under color of state law."  *Gregory v. Shelby County*, 220

F.3d 433, 441 (6th Cir. 2000).  Section 1983 "creates no substantive rights; it merely

provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

1. <u>*Individual Capacity Claims*</u>

Plaintiffs allege in their complaint that Defendants violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. At the outset, the Court notes that the Fourth Amendment applies to Plaintiff's situation. At all times relevant to his Complaint, Plaintiff was in the custody of the officers who effected his arrest. Therefore, the Fourth Amendment's protection applies. *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) ("the Fourth Amendment reasonableness standard governs throughout the seizure of a person"); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988) ("[T]he seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers."). Accordingly, Plaintiff's general claims under the Fifth and Eighth Amendments will be **DISMISSED WITH PREJUDICE**.

a. <u>Cruel and Unusual Punishment</u>

Cruel and unusual punishment is prohibited by the Eighth Amendment. *See* U.S. Const. amend. VIII. The Eighth Amendment's protections apply only to post-conviction inmates. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). As Plaintiffs § 1983 claims relate only to Decedent's arrest and not to any post-conviction treatment, Plaintiffs cannot sustain an Eighth Amendment claim. Accordingly, Plaintiffs' § 1983 claims under the Eighth Amendment will be **DISMISSED WITH PREJUDICE**.

b.    <u>False Arrest and Imprisonment</u>[1]

Defendants respond to Plaintiffs' false arrest and imprisonment allegations by asserting qualified immunity. The doctrine of qualified immunity shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court of the United States has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under this test, district courts must "consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.' " *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (quoting Saucier, 533 U.S. at 201).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myres v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiffs must "1) identify a clearly established right alleged to have been

---

[1]    As Plaintiff's false arrest and false imprisonment claims are functionally the same, the Court will apply the same analysis to both. *Gumble v. Waterford Township*, 171 Fed. App'x 502, 507 (6th Cir. 2006) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("[T]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff.")); *Gorcaj v. Medulla*, 51 Fed. App'x 158, 159 (6th Cir. 2002) ("[A] section 1983 claim based on theories of false arrest, false imprisonment, and malicious prosecution stands on the Fourth Amendment and turns on the question of probable cause.")

violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

The key inquiry in determining whether a right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Ewolski*, 287 F.3d at 501 ("For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992))). Although the conduct in question need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Id.* Officials are entitled to qualified immunity " 'when their decision was reasonable, even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 349 (1986)).

The threshold issue is thus whether Plaintiff has alleged a constitutional violation by Defendants Pearson or Smith. *Pray*, 49 F.3d at 1158. A claim asserting the Fourth Amendment right against false arrest under § 1983 turns on whether the arresting officer had probable cause to arrest the plaintiff. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). Probable cause exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution,

in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

> The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.

*United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

Defendant Pearson arrested Plaintiff for public intoxication and resisting arrest. Under Tennessee law,

> [a] person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:
>
> (1) The offender may be endangered;
> (2) There is endangerment to other persons or property; or
> (3) The offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-17-310(a). According to Defendant Pearson, Plaintiff's speech was "slightly slurred" and [h]e has a strong odor of intoxicant about his person . . . ." (Pearson Dep. 26:15-17). While such behavior is indicative of intoxication, it does not necessarily lead to the conclusion that Plaintiff was endangering himself, others, or property, or unreasonably annoying others. *See Diamond v. Howd*, 288 F.3d 932, 937 (6th Cir. 2002). Based on the information in the record before it, the Court cannot conclude, as a matter of law, that Defendant Pearson's belief that Plaintiff was committing the offense of public intoxication was objectively reasonable. Therefore, determination of this issue on summary judgment is improper. *See Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) ("[T]he existence of probable cause in a section 1983

action presents a jury question, unless there is only one reasonable determination possible.")

That Defendants are not entitled to summary judgment as to whether Defendant Pearson had probable cause to arrest Plaintiff for public intoxication does not, however, end the inquiry. "[T]o the extent that probable cause existed for *either* of [Plaintiff's charges (public intoxication *or* resisting arrest)] the arrest was lawful with respect to the probable-cause requirement." *Swiecicki v. Delgado*, 463 F.3d 489, 500 (6th Cir. 2006) (emphasis added). Thus, under Tennessee criminal law, Defendant's would be entitled to summary judgment on Plaintiff's false arrest claim under § 1983 if Plaintiff's resisting arrest charge was supported with probable cause, notwithstanding that the charge for which he was originally arrested was not—at least on the record before the Court on the instant motion for summary judgment—supported by probable cause.[2]

In Tennessee, resisting arrest is defined as "intentionally prevent[ing] or obstruct[ing] anyone known to the person to be a law enforcement officer . . . from effecting [an] arrest . . . *by using force against the law enforcement officer or another.*" Tenn. Code Ann. § 39-16-602 (emphasis added). According to Plaintiff (whose version of the facts the Court is required to accept for purposes of this motion), after asking whether Defendant Pearson was going to take him to jail, and after Defendant Pearson

---

[2] The Sixth Circuit Court of Appeals in *Delgado* held that, under Ohio criminal law, there can be no probable cause for a charge of resisting arrest if the initial offense for which the suspect was arrested was not itself supported by probable cause. Unlike Ohio law, the offense of resisting arrest in Tennessee does not include the element that the suspect must be free from pre-resistance excessive force. *See* Tenn. Code Ann 39-16-602(a). Instead, the arresting officer's pre-resistance excessive force is a statutory defense to the crime of resisting arrest. *State v. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, *3 (Tenn. Crim. App. June 30, 1999) ("The legality of the arrest is not relevant to the determination of whether the defendant committed the offense of resisting arrest, unless the defendant is claiming self defense against excessive force from officers."). Thus, in Tennessee, an officer has probable cause to arrest a suspect who is resisting arrest, even if the officer did not initially have probable cause to arrest the suspect, so long as the suspect is not acting in self defense of excessive force.

answering in the affirmative, Plaintiff simply turned his back and walked away. Plaintiff did not use force against Defendant Pearson or anyone else. *See State v. Corder*, 854 S.W.2d 653, 655 (Tenn. Crim. App. 1992) (holding that a criminal defendant who refused to get into patrol vehicle, directed obscene language at arresting officers, but did not physically assault officers, did not use force against the officers, and did not, therefore, resist arrest). Thus, Plaintiff has borne his burden on summary judgment to show a question of material fact as to whether Defendant Pearson had probable cause to arrest Plaintiff for resisting arrest.

A review of the elements set forth in the applicable statutes against the facts in the record before the Court on the instant motion for summary judgment suggests that Defendant Pearson may well have lacked probable cause to arrest Plaintiff for either public intoxication or resisting arrest. Accordingly, the Court concludes that Plaintiff's right to be free from unlawful arrest is clearly established, so that Defendant Pearson is not entitled to qualified immunity. *See Ewolski*, 287 F.3d at 501. Defendant Pearson's motion for summary judgment will be **DENIED** as to Plaintiff's false arrest claim.

Plaintiff alleges that Defendant Smith stepped in to aid Defendant Pearson in physically overpowering him. Importantly, Plaintiff does not contradict that Defendant Smith only became aware of the situation after Plaintiff and Defendant Pearson began their altercation. Defendant Smith then assisted Defendant Pearson in "taking down" Plaintiff. (Shaw Aff. ¶ 22.) Thus, from his perspective, Defendant Smith "could reasonably have concluded that the plaintiff was resisting arrest and that they were entitled to assist a fellow officer in making the arrest," *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002), notwithstanding that the arresting officer may have lacked probable

cause for such an arrest.  As a reasonable officer in Defendant Smith's position would have no reason to suspect that his decision to assist Defendant Pearson was unlawful, Defendant Smith is entitled to qualified immunity.  *Id.*  Accordingly, Defendant Smith's motion for summary judgment will be **GRANTED** as to Plaintiff's claims of false arrest and false imprisonment.

c.    Excessive Force

Defendants argue that they are also entitled to qualified immunity for Plaintiff's excessive force claims.  Again, the threshold issue is whether Plaintiff has alleged a constitutional violation by Defendants Pearson or Smith.  *Pray*, 49 F.3d at 1158.  An excessive force claim is analyzed under the Fourth Amendment, and hinges on whether the degree of force used was objectively reasonable.  *Graham v. Connor*, 490 U.S. 386, 394, 396-97 (1989); *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999); *Martin v. Heideman*, 106 F.3d 1308, 1311-12 (6th Cir. 1997).

In determining whether a particular use of force is excessive, the Court may look at the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest.  *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992).  The ultimate question, however, is "whether the totality of the circumstances justifie[d]" the use of force.  *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 479 (E.D. Mich. 2006).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  Thus, the Court must take into account the fact that "police officers are often forced to

make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

As to Defendant Pearson, Plaintiff alleges and supports with sworn testimony that, while at the hospital, Defendant Pearson pinned him to the ground and used mace spray at close range while Plaintiff was handcuffed, and without prior provocation or resistance by Plaintiff. The Sixth Circuit has held that various types of force applied after a suspect is subdued are objectively unreasonable, and therefore violate the Fourth Amendment. *See*, *e.g.*, *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *Metiva*, 31 F.3d at 386 (use of force after suspect incapacitated by mace would be excessive as a matter of law); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line."); *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir. 1985) ("The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive.") Further, courts have held that a suspect's right to be free of post-subdual force is clearly established, so as to preclude qualified immunity. *Phelps*, 286 F.3d at 302; *Metiva*, 31 F.3d at 387. Accordingly, Defendant Pearson's Motion for Summary Judgment will be **DENIED** as to Plaintiff's excessive force claim.

As noted above, Defendant Smith did not accompany Plaintiff to the hospital. Plaintiff's excessive force claim against Defendant Smith relates solely to the altercation at the restaurant. Defendant Smith did not intervene until after the altercation between

Plaintiff and Defendant Pearson started. Further, Defendant Pearson verbally instructed Plaintiff to stop resisting within earshot of Defendant Smith. Thus, a reasonable person in Officer Smith's position could surmise that Plaintiff was resisting arrest, even if, in fact, he was not. *See Greene*, 310 F.3d at 898. As such, a reasonable person in Defendant Smith's position could also conclude that Plaintiff posed a threat to Defendant Pearson. Accordingly, the totality of the circumstances justifies Defendant Smith's decision to assist Defendant Pearson in taking Plaintiff to the ground, thus, Defendant Smith is entitled to qualified immunity for his actions. Defendant Smith's motion for summary judgment will be **GRANTED** as to Plaintiff's claim of excessive force against him.

d. <u>Failure to Intervene</u>

In limited circumstances, an officer is under an affirmative duty to intervene against another officer's use of excessive force. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

As explained above, from his perspective, Defendant Smith did not have reason to know that Defendant Pearson was using excessive force. Accordingly, the Court will **GRANT** summary judgment as to Plaintiff's claim of failure to intervene.

e. <u>Denial of Medical Treatment</u>

Persons in the custody of police but not yet convicted are afforded the right to adequate medical treatment under the Fourteenth Amendment. *See Gray v. City of*

*Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).  To succeed under this standard, Plaintiff must demonstrate that the Defendants acted with "deliberate indifference to [his] serious medical needs."  *Id.* (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001)).  Such a claim has both an objective and a subjective component, and requires Plaintiff to show that he: "(1) had a sufficiently serious medical need; and (2) that the officers knew that the serious medical need posed a substantial risk to the detainee, but proceeded to disregard the risk."  *Schliewe v. Toro*, 138 Fed. App'x 715, 722 (6th Cir. 2005).

In opposition to Defendants' motions for summary judgment, Plaintiff first argues that Defendant Pearson's use of mace spray at the hospital amounts to a denial of medical treatment.  Plaintiff offers no explanation or citation of authority in support of his argument.  As explained above, Defendant Pearson's use of mace spray better fits into the rubric of excessive force under the Fourth Amendment.  Plaintiff next cites Defendant Pearson's decision to take Plaintiff to a certain hospital, but offers no discussion or citation as to how this fact is relevant.  Accordingly, the Defendants' motions for summary judgment will be **GRANTED** as to Plaintiff's denial of medical treatment claim.

### 2.    *Official Capacity Claims*

Plaintiff names the officer Defendants individually and in their official capacities.  "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The City of Chattanooga is a named defendant to this suit, and this entity's liability is discussed below.  Accordingly,

Plaintiff's § 1983 causes of action against the officer Defendants in their official capacity will be **DISMISSED WITH PREJUDICE**, as they are redundant in light of Plaintiff's claims against the City of Chattanooga.

### 3. *Supervisory Liability Claims*

As the Court will dismiss Defendants Pearson's and Smith's alleged supervisors, the Five Unknown Officers, pursuant to Rule 4(m), Plaintiff's claim of supervisory liability will be **DISMISSED WITH PREJUDICE.**

### 4. *Municipal Liability Claims*

Plaintiff seeks to hold the City of Chattanooga liable for the manner in which it trained, supervised, and disciplined Defendants Pearson and Smith. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipalities may not be held liable under § 1983 under the theory of *respondeat superior*. *Id.* at 691. Rather, an entity is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" alleged by plaintiff. *Id.* at 694. In other words, "[t]he plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between

the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

Although Plaintiff alleges that Defendant City of Chattanooga failed to train, supervise, and discipline its officers, he supports only his failure to train theory in response to Defendants' motions for summary judgment. Under *Monell*, a plaintiff can establish municipal liability by showing, *inter alia*, "a policy of inadequate training or supervision." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A failure to train may serve as the basis for § 1983 municipal liability, but only "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of" persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

"A showing of simple or even heightened negligence" is not sufficient to establish deliberate indifference. *Brown*, 520 U.S. at 407; *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). Rather, " 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410; *Stemler*, 126 F.3d at 865. Thus, municipal liability in this context is proper only when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Plaintiff does not point to specific evidence of the City of Chattanooga's training program. Nor does Plaintiff offer evidence of any continued practice—either official or

informal—by the City. Instead, Plaintiff takes issue with the fact that Defendant Pearson's supervisors allowed him to be transported the hospital for medical treatment by the same officer—Defendant Pearson—who was involved in the altercation. Plaintiff argues that "[i]t is very clear from what happened to the Plaintiff and the testimony of the witnesses and the record as a whole that the [C]ity has no policy to protect an individual from an abusing officer." (Court Doc. No. 69, Pl.'s Resp. to Mots. for Summ. J. 4). Restated in the positive, Plaintiff seeks to have the Court infer that the City's policy or training does not protect an arrestee from an abusive officer. As a matter of law, however, such an inference is impermissible. At most, Plaintiff has shown a single instance in which an arrestee was allowed to be transported by an allegedly abusive officer, which does not provide a sufficient basis for a failure to train claim. *See City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . ."); *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) ("Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training.") Accordingly, Defendant City of Chattanooga's motion for summary judgment will be **GRANTED** as to Plaintiff's claim of municipal liability.

### B.    42 U.S.C. § 1985

Although initially couched in terms of § 1983 in his Complaint, Plaintiff's conspiracy claim most closely resembles a cause of action under § 1985(2) or (3). Plaintiff specifically cites and argues § 1985 in response to Defendants' motions for

summary judgment. Section 1985 provides a cause of action when "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . ." or when "two or more persons . . . conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . ." 42 U.S.C. § 1985(2), (3). Under either subsection, Plaintiff must establish that (1) he is a member of a protected class, and (2) he was discriminated against based on such membership. *See Dallas v. Holmes*, 137 Fed. App'x 746, 753 n.5 (6th Cir. 2005). As Plaintiff fails to allege and support either prong with specific facts, Defendants' motions for summary judgment as to Plaintiff's § 1985 claim will be **GRANTED**.

### C. STATE LAW CLAIMS

Plaintiff's state-law claims against Defendants implicate the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. §§ 29-20-101 to 408. The TGTLA serves to waive select portions of the absolute sovereign immunity enjoyed by governmental entities, *see* Tenn. Code. Ann. § 29-20-201, and government employees sued in their official capacities, *see Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding that suits against state employees acting in their official capacities are deemed to be suits against the State itself). If the TGTLA does not remove sovereign immunity from a governmental entity, that entity's employees can be liable in their individual capacities. *Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002) (citing Tenn. Code. Ann. § 29-20-310). Conversely, if sovereign immunity for a governmental entity is removed, its employees are absolutely immune from suit in their individual

capacities.[3]  Tenn. Code Ann. § 29-20-310(b); *Neely v. McDonald*, No. M2000-00099-COA-R3-CV, 2000 WL 1568387, at *2 (Tenn. Ct. App. Oct. 20, 2000).  Bearing this scheme in mind, the Court will address Plaintiff's state law claims.

1.  *Official Capacity Claims*

Section 29-20-205 of the TGTLA provides that a municipality's immunity is retained when injury arises out of "civil rights."  This Court construes "civil rights" under section 29-20-205 as including claims arising under the federal civil rights laws and the U.S. Constitution. *Hale v. Randolph*, No. 1:02-cv-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004); *cf. Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003). Here, as in *Hale*, Plaintiff's official capacity-state law claims against the governmental entities "clearly arise out of and directly flow from the allegations that the police officers deprived [plaintiff] of [his] civil rights . . . ." *Hale*, 2004 WL 1854179, at *17. Because plaintiff asserts his state law claims in the context of a civil rights case, his alleged injuries arise out of "civil rights" and the governmental entities are entitled to immunity under the TGTLA. *See id.*  Accordingly, summary judgment will be **GRANTED** as to Plaintiff's official capacity claims of false arrest and imprisonment, aggravated assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution.

2.  *Individual Capacity Claims*

a.  False Arrest and False Imprisonment

Although he cites criminal statutes, the Court must assume that Plaintiff asserts a common law claim for the torts of false arrest and imprisonment.  As explained above,

---

[3]  Unless the employee is a "health care practitioner" being sued for medical malpractice.  Tenn. Code. Ann. § 29-20-310(b).

Defendant City of Chattanooga retains immunity from these claims under the TGTLA. Therefore, Defendants Pearson and Smith may be liable in their individual capacities. *See Baines*, 86 S.W.3d at 583 n.5.

The elements of false arrest, which is known as false imprisonment in Tennessee, are "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990); *see Barbee v. Wal-Mart Stores, Inc.*, No. W2003-00017-COA-R3-CV, 2004 WL 239763, at *5 (Tenn. Ct. App. Feb. 9, 2004). It is undisputed that only Defendant Pearson restrained Plaintiff. Therefore, Plaintiff cannot show that Defendant Smith engaged in Plaintiff's "detention or restraint," and his motion for summary judgment will be **GRANTED** as to Plaintiff's individual-capacity claims of false arrest and imprisonment. *Coffee*, 795 S.W.2d at 659.

By contrast, Plaintiff does allege and support with specific facts that Defendant Pearson restrained him. Further, as explained above in the context of Plaintiff's § 1983 false arrest claim, there remains a question about whether Defendant Pearson had probable cause to effect Plaintiff's arrest. As such, Plaintiff has preserved a genuine issue of material fact as to whether his resultant detention and restraint was lawful, and Plaintiff has established a *prima facie* case of false imprisonment under Tennessee common law. *See id.* Accordingly, Defendant Pearson's motion for summary judgment will be **DENIED** as to Plaintiff's individual capacity claim of false arrest and imprisonment.

b.    <u>Aggravated Assault</u>

The Court assumes that Plaintiff wishes to bring a claim of assault under Tennessee common law, despite the fact that he cites criminal statutes.  As Defendant City of Chattanooga retains immunity from this claim under the TGTLA, Defendants Pearson and Smith may be liable in their individual capacities.  *See Baines*, 86 S.W.3d at 583 n.5.

An assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person."  *Lewis v. Metro. Gen. Sessions Court for Nashville & Davidson County*, 949 S.W.2d 696, 703 (Tenn. Crim. App. 1997); *Dowlen v. Mathews*, No. M2001-03160-COA-R3-CV, 2003 WL 1129558, at *2 (Tenn. Ct. App. Mar. 14, 2003).   Under Tennessee common law, "an officer may only use the force reasonably necessary to accomplish [an] arrest, with due regard to other attendant circumstances, such as his own safety or that of others present."  *City of Mason v. Banks*, 581 S.W.2d 621, 625 (Tenn. 1979).  Further, Tennessee courts apply federal case law on excessive force in similar contexts.  *See McCrary v. City of Memphis*, No. W2004-01840-COA-R3CV, 2005 WL 452788, *6 (Tenn. Ct. App. Feb. 25, 2005) (applying an objectively reasonable standard to excessive force claims brought under state law and citing several United States Court of Appeals for the Sixth Circuit cases).

As explained above in the context of Plaintiff's § 1983 excessive force claim, Plaintiff has failed to establish a question as to whether Defendant Smith acted objectively reasonably in Plaintiff's arrest.   Plaintiff has, however, preserved the question of whether Defendant Pearson acted in an objectively reasonable manner.

Accordingly, the Court will **GRANT** Defendant Smith's motion for summary judgment as to Plaintiff's common law claims of assault, and will **DENY** Defendant Pearson's motion for summary judgment as to the same.

c.     Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress are as follows: (1) defendant's conduct must be intentional or reckless; (2) defendant's conduct must be "so outrageous that it is not tolerated by civilized society"; and (3) defendant's conduct must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Tennessee courts have adopted the high threshold standard of the Restatement (Second) of Torts for determining whether the conduct at issue is so outrageous as to be tortious:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Id.* at 623 (citations and internal quotations omitted). A court's duty is to determine whether the defendant's conduct is so extreme and outrageous that recovery is permitted. *Id.*

Both Defendants argue that their conduct was not so outrageous that liability should attach. As explained above, Defendant Smith's conduct was objectively reasonable. From his perspective, he was merely aiding an officer in a confrontation with a suspect. His conduct does not, therefore, cause the level of outrage necessary to sustain a claim of intentional infliction of emotional distress, and his motion for

summary judgment will be **GRANTED** as to Plaintiff's claim of intentional infliction of emotional distress.

By contrast, Defendant Pearson's conduct, at least as alleged and supported by Plaintiff, might be said to go "beyond all bounds of decency." *Id.* Plaintiff has preserved the issue of whether his actions fall into the narrow class of conduct which a civilized community would not tolerate. His act of pinning down Plaintiff and deploying mace spray in his face at close range, unprovoked and while handcuffed, may well cause "an average member of the community [to] arouse his resentment against [Defendant Pearson], and lead him to exclaim, 'Outrageous!' " *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004). Accordingly, Defendant Pearson's motion for summary judgment will be **DENIED** as to Plaintiff's claim of intentional infliction of emotional distress.

### d. Negligent Infliction of Emotional Distress

The elements of negligent infliction of emotional distress are (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004). In addition, if the claim stands alone—that is, is not accompanied by another claim for physical injuries, the "plaintiff must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence." *Id.*; *Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 136-37 (Tenn. 2001); *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). On the other hand, if a plaintiff's claim for emotional damages is parasitic, or accompanied by claims for physical injury, the plaintiff need not present expert proof as part of his *prima facie* case. *Amos*, 62 S.W.3d at 136-37.

Plaintiff's claim of negligent infliction of emotional distress is accompanied by other claims for physical damages. Thus, contrary to Defendants' arguments, Plaintiff's parasitic claim need not be supported by expert testimony at this juncture of the lawsuit. *See id.* Accordingly, Defendants motions for summary judgment will be **DENIED** as to Plaintiff's claim of negligent infliction of emotional distress.[4]

e.    Malicious Prosecution

Malicious prosecution is "the employment of legal process for its ostensible purpose, but without probable cause." *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977). To establish a *prima facie* case of malicious prosecution, the plaintiff must prove that "(a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005). "The third element of a malicious prosecution claim requires that the termination of the prior lawsuit or judicial proceeding be 'final and favorable.' " *Id.* (quoting *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992)). In defining what is a favorable outcome, the Tennessee Supreme Court held that "[i]t is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must reflect on the merits of the underlying action." *Id.* at 531 (quoting *Lackner v. LaCroix*, 602 P.2d

---

[4]    While it is not apparent to the Court that Plaintiff will be able to prove the elements of negligent infliction of emotional distress against Defendant Smith, Defendant Smith does not, in his instant action, address this claim on the merits. Whether this cause of action can survive a motion under Federal Rule of Civil Procedure 50 remains to be seen.

393, 394 (1979) (citations omitted)). To determine whether termination was on the merits, a court must look to the circumstances of the underlying case. *Id.*

In the instant case, Defendant Pearson failed to appear as a witness for the prosecution in the corresponding criminal case against Plaintiff. (Court Doc. No. 69-3, Dep. of Def. Pearson 40:22-25.) As a result, the criminal court initially passed, and then dismissed, the case against Plaintiff. (*Id.*) The record, however, is lacking in detail on this decision, and Plaintiff offers nothing further to explain it. The Court cannot determine whether the dismissal was with or without prejudice, or was initiated by the prosecution or *sua sponte*, and therefore cannot determine whether the termination reflected on the merits of Plaintiff's case. Plaintiff has failed to bear his burden to point to specific facts within the record to show that a genuine issue of material fact exists as to each element of his claim for malicious prosecution. Accordingly, the Court will **GRANT** Defendants' motions for summary judgment on Plaintiff's claim of malicious prosecution.[5]

### D.    DAMAGES

#### 1.    *42 U.S.C. § 1988*

Section 1988 allows the Court, at its discretion, to award attorney's fees and expert witness fees in conjunction with § 1983. As § 1983 claims remain pending against Defendant Pearson, the Court will **DENY** his motion for summary judgment in this regard.

---

[5]    Additionally, Defendant Smith correctly points out that Plaintiff has presented no evidence that he initiated or participated in Plaintiff's prosecution. It is axiomatic that a cause of action for malicious prosecution cannot lie against an actor who has no part in the prosecution. *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992) (requiring, *inter alia*, that "the defendant initiated a prior lawsuit or judicial proceeding against the plaintiff without probable cause"). Accordingly, the Court has an alternative reason to grant Defendant Smith's motion for summary judgment as to Plaintiff's claim of malicious prosecution.

No § 1983 claims remain pending, however, against Defendant Smith. Accordingly, the Court will **GRANT** Defendant Smith's motion for summary judgment as to § 1988.

2. _Punitive Damages_

a. Municipality and Official Capacity Claims

As a matter of law, Plaintiff cannot make a claim for punitive damages against Defendant City of Chattanooga under § 1983. _City of Newport v. Fact Concerts, Inc._, 453 U.S. 247, .271 (1981).

Plaintiff also seeks punitive damages in conjunction with his state-law claims. Defendants object. "[A] governmental entity [is] normally not subject to punitive damages under the Governmental Tort Liability Act . . . ." _Guy v. Mutual of Omaha Ins. Co._, 79 S.W.3d 528, 537 n.3 (Tenn. 2002). Earlier, the Supreme Court of Tennessee observed that

> the weight of authority is that punitive damages are not recoverable from municipal or local governments, on grounds of public policy. Since the ultimate payment of public tort claims devolves upon taxpayers, most courts have concluded that punitive awards in such cases have little deterrent value and do not advance any other public purpose underlying exemplary damages.

_Tipton County Bd. of Educ. v. Dennis_, 561 S.W.2d 148, 153 (Tenn. 1978). This Court has applied the language in _Dennis_ to hold that punitive damages are not recoverable against a municipal defendant under the TGTLA. _See Tate v. Wenger_, No. 1:04-CV-379, 2006 WL 1582422, at *16 (E.D. Tenn. June 6, 2006). Further, Plaintiff has not demonstrated any special circumstances that would except the instant case from the normal rule against punitive damages in TGTLA cases. _See Guy_, 79 S.W.3d at 537 n.3.

Accordingly, summary judgment will be **GRANTED** as to Plaintiff's claim for punitive damages against Defendant City of Chattanooga.

b.  Individual Capacity Claims

In order to be eligible for an award of punitive damages under Tennessee law, a plaintiff must prove by clear and convincing evidence that the defendant acted "either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof and Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). In another context, the Tennessee General Assembly has defined the term "intentional." " 'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a).

Plaintiff has presented facts which could be adequate to show, clearly and convincingly, that it was Defendant Pearson's conscious objective to engage in the conduct that serves as the basis for Plaintiff's state law claims, namely to arrest Plaintiff and then deploy mace spray in Plaintiff's face at close range. Officer Pearson's argument to the contrary is insufficient to obviate this genuine issue of material fact, and his Motion for Summary Judgment will be **DENIED** as to Plaintiff's claim for punitive damages under Tennessee law.

By contrast, the only a negligence claim against Defendant Smith remains. Negligence is insufficient to warrant punitive damages under Tennessee law. *See Hodges*, 833 S.W.2d at 901. Accordingly, the Court will **GRANT** him summary judgment on Plaintiff's claims for punitive damages.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment by Defendants, Officer Michael Smith, Five Unknown Officers, and the City of Chattanooga [Court Doc. No. 61].  Defendant City of Chattanooga is **DISMISSED WITH PREJUDICE**.  Defendants Five Unknown Officers are **DISMISSED WITHOUT PREJUDICE**.  Defendant Jerry Pearson's Motion for Summary Judgment [Court Doc. No. 58] is **GRANTED IN PART AND DENIED IN PART**.

Remaining before the Court are:

- Plaintiff's claims of false arrest and excessive force under 42 U.S.C. § 1983 against Defendant Pearson;

- Plaintiff's claims of false arrest and imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress under Tennessee law against Defendant Pearson; and

- Plaintiff's claim of negligent infliction of emotional distress under Tennessee law against Defendant Smith.

SO ORDERED this 21st day of August, 2007.

_____
*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE